NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INSTITUTE OF MANAGEMENT ACCOUNTANTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAESC CO., LIMITED, <br><br> Defendant. | Civ. Action No. 22-4265 (SDW) (LDW) <br><br> **OPINION** <br><br> April 23, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendant MAESC Co., Limited's ("Defendant") motion (D.E. 37 ("Motion")) to vacate the default judgment entered against it pursuant to Federal Rule of Civil Procedure ("Rule") 60(b) and to dismiss Plaintiff Institute of Management Accountants, Inc.'s ("IMA" or "Plaintiff") complaint (D.E. 1 ("Complaint")) for lack of personal jurisdiction. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's Motion is **GRANTED**.

I.   FACTUAL BACKGROUND

Plaintiff, a nonprofit corporation incorporated and domiciled in New Jersey, offers a Certified Management Account ("CMA") certificate for accountants and financial professionals who pass the CMA exam. (D.E. 1 ¶ 1.) This CMA certificate is offered exclusively by Plaintiff, and it has been recognized as the global benchmark for management accountants and financial professionals. (*Id.* ¶¶ 5–6; D.E. 11-2 ¶ 7.) Plaintiff also charges fees for membership, its CMA exam, and continuing professional education. (D.E. 1 ¶ 8; D.E. 11-2 ¶ 9.)

To promote its programs and services around the world, Plaintiff authorizes various international chapters pursuant to charters that it grants. (D.E. 1 ¶ 9; D.E. 11-2 ¶ 10.) In or around March 2015, several IMA members in China, including Jun Pu ("Pu"), Ruiyang Ma ("Ma"), and Menga Xiang ("Xiang"), applied for a charter. (D.E. 1 ¶ 10; D.E. 11-2 ¶ 11.) Plaintiff allegedly agreed to grant them a charter subject to certain terms and conditions, including, among other things, a requirement that Pu, Ma, and Xiang establish the "IMA China Education Chapter" to promote membership and products on behalf of IMA. (D.E. 1 ¶ 10; D.E. 11-2 ¶ 11.) Shortly thereafter, Defendant was incorporated under the laws of Hong Kong. (D.E. 1 ¶ 11; D.E. 11-2 ¶ 14.) Its founding member was IMA China Co., Limited, and Ma was the first director. (D.E. 1 ¶ 11; D.E. 11-2 ¶ 14.)

In or around August or September 2015, Plaintiff and Defendant allegedly formalized their business relationship.[1] (D.E. 1 ¶ 16; D.E. 11-2 ¶ 19.) Plaintiff asserts that Defendant agreed to act as its agent; promote IMA's membership and services within China; and collect on IMA's behalf fees for membership, exams, and continuing professional education. (D.E. 1 ¶ 16; D.E. 11-2 ¶ 19.) For several years, Defendant performed these services and, in return, received a portion of the fees it collected and remitted to Plaintiff. (D.E. 1 ¶¶ 18–19; D.E. 11-2 ¶¶ 20–25.)

In early 2019, Defendant purportedly began to violate the duties it allegedly owed to Plaintiff. (D.E. 1 ¶¶ 21, 26, 34; D.E. 11-2 ¶ 25.) According to Plaintiff, Defendant failed to remit payments in breach of their agreement; misappropriated Plaintiff's content in order to create its own platform entitled "Management Accounting Competency Certificate" ("MACC"), which competed directly with Plaintiff's CMA program; and promoted and sold the MACC program to Plaintiff's prospective clients while claiming affiliation with Plaintiff. (D.E. 1 ¶¶ 21–32.) Plaintiff

---

[1] Defendant contests the existence of a contract, but it is undisputed that it performed several functions for or on behalf of Plaintiff.

asserts that Defendant has failed to pay $257,452.80 in fees and wrongfully gained $16.5 million in revenues from selling its MACC program in lieu of the CMA program to over 33,000 of Plaintiff's prospective customers. (*Id.* ¶¶ 21–23.) On or about March 21, 2019, Plaintiff revoked the charter that it granted to Defendant and requested that Defendant cease and desist using Plaintiff's logo, trademarks, names, brand assets, and any other indicia of a relationship between them. (*Id.* ¶¶ 34–35.) Defendant purportedly refused to do so. (*Id.* ¶¶ 37, 39.)

## II. PROCEDURAL HISTORY

On June 24, 2022, Plaintiff filed the Complaint alleging that Defendant breached its contractual and fiduciary obligations. (*See generally* D.E. 1.) On July 6, 2022, Plaintiff served the summons and Complaint on Defendant's agent. (D.E. 5.) Because Defendant failed to answer or otherwise respond, Plaintiff requested entry of default on August 5, 2022, which was granted by the Clerk of Court on August 8, 2022. (D.E. 6.) Four days later, Plaintiff moved for a default judgment. (D.E. 7.) On September 7, 2022, this Court denied without prejudice Plaintiff's motion for default judgment because "Plaintiff ha[d] failed to submit the appropriate certification and/or affidavit(s) supporting the damages sought." (D.E. 8 at 1.) Plaintiff filed a second motion for default judgment on October 17, 2022, which this Court granted on October 26, 2022. (D.E. 11, 12.) Approximately nine months later, on July 31, 2023, Defendant filed a motion to set aside the default judgment and dismiss the action for lack of personal jurisdiction. (D.E. 13.) Because counsel who initially appeared on behalf of Defendant had a potential conflict of interest, Defendant was required to engage new counsel. On November 7, 2023, Defendant refiled the motion. (D.E. 37.)

## III. STANDARD OF REVIEW

Rule 60(b) provides in relevant part:

3

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1). "The general purpose of Rule 60 . . . is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. & Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). Importantly, the Third Circuit "has adopted a policy disfavoring default judgments and encouraging decisions on the merits," *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988) (citing *Tozer*, 189 F.2d at 245), and accordingly, it has instructed that "doubtful cases [must] be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits,'" *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)). The decision to set aside a default judgment is left "primarily to the discretion of the district court." *Id.* at 194 (citing *Tozer*, 189 F.2d at 244).

## IV. DISCUSSION

Defendant seeks to vacate the default judgment on multiple grounds. First, Defendant argues that the default judgment must be vacated pursuant to Rule 60(b)(4) because this Court lacks personal jurisdiction over it, and thus, the default judgment was void. In the alternative, Defendant contends that the default judgment should be vacated pursuant to Rule 60(b)(1) and (6).

### A. Rule 60(b)(4)

The default judgment was not void because this Court has at all times relevant to the instant dispute had personal jurisdiction over Defendant.

4

Under Rule 60(b)(4), a court may vacate a final judgment that is void—*i.e.*, "one which, from its inception, was a complete nullity and without legal effect." *Marshall v. Bd. of Educ.*, 575 F.2d 417, 422 n.19 (3d Cir. 1978) (quoting *Lubben v. Selective Serv. Sys. Loc. Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972)). Mere error does not render a judgment void. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (quoting *Hoult v. Hoult*, 57 F.3d 1, 6 (1st Cir. 1995)). While a default judgment entered by a court lacking personal jurisdiction over the defendant may be void, *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008) (citing *Marshall*, 575 F.2d at 422), "[f]ederal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction," *United Student Aid Funds, Inc.*, 559 U.S. at 271 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)). "[T]otal want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and . . . only rare instances of a clear usurpation of power will render a judgment void." *Id.* (quoting *United States v. Bach Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990)).

In New Jersey, a federal court may exercise personal jurisdiction "to the uttermost limits permitted by the United States Constitution."[2] *Nicastro v. McIntyre Mach. Am., Ltd.*, 897 A.2d 575, 589 (N.J. 2010) (quoting *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971)). As such, district courts must determine whether "the exercise of personal jurisdiction over [the defendant] satisfies constitutional due process." *Time Share Vacation Club v. Atl. Resorts, Ltd..*, 735 F.2d 61, 63 (3d Cir. 1984). That "inquiry involves an assessment as to 'whether "the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense

---

[2] "A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 144–45 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Ca. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)).

5

in that state,'"'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (alteration in original) (quoting *Time Share Vacation Club*, 735 F.2d at 63), and it "focuses on the nonresident defendant's 'minimum contacts' with the forum," *id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."[3]  *Id.*  Here, Plaintiff alleges only that this Court has specific jurisdiction over Defendant based on the parties' business relationship.

Specific jurisdiction exists if the following three requirements are met:  (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "the exercise of jurisdiction must otherwise 'comport[] with "fair play and substantial justice."'"  *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (first alteration in original) (internal citations omitted).  In cases involving interstate contracts, "[the Supreme Court] ha[s] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 260 (3d Cir. 2000) (alterations in original) (quoting *Burger King*, 471 U.S. at 473).  A contract and its implementing correspondence, however, are insufficient to establish the requisite minimum contacts; courts often must consider the contracting parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Vetrotex Certainteed Corp. v. Consolid. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996)

---

[3] "If the defendant 'maintain[s] continuous and substantial forum affiliations,' then general jurisdiction exists.  If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim." *Metcalfe*, 566 F.3d at 334 (quoting *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 321 (3d Cir. 2007)).

6

(quoting *Burger King*, 471 U.S. at 479). Courts may find that personal jurisdiction arises out of a contract with a nonresident when the nonresident "defendant solicit[s] the contract or intiate[s] the business relationship leading up to the contract, . . . sen[ds] payments to the plaintiff in the forum state, or . . . engage[s] in extensive post-sale contacts with the plaintiff in the forum state." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (quoting *Vetrotex Certainteed Corp.*, 75 F.3d at 152–53).

At this stage, the limited record before this Court indicates that there is more than an arguable basis for personal jurisdiction over Defendant. Although the parties dispute the validity of the contract and any accompanying obligations, it appears that Defendant, through its agents and predecessors in interest, deliberately reached out to Plaintiff—a New Jersey corporation—and applied for a charter. Moreover, during the yearslong business relationship, Defendant "sen[t] payments to [P]laintiff in the forum state" and engaged in repeated contacts with Plaintiff in New Jersey, including by providing reports to Plaintiff and maintaining one of its agents, Pu, on Plaintiff's Board of Directors. (D.E. 11-2 ¶ 18.) Under the Third Circuit's holding in *Remick v. Manfredy*, such actions by an out-of-state defendant are sufficient to establish personal jurisdiction over Defendant in New Jersey.

This conclusion is further supported by the Supreme Court's ruling in *Burger King v. Rudzewicz*, 471 U.S. 462 (1985). That case involved a 20-year franchise agreement between residents of Michigan and the Florida-based Burger King Corporation. *Id.* at 480. Pursuant to the franchise agreement, the Michigan residents assumed operation over an existing Burger King facility in Michigan—and thus received a slew of benefits from Burger King[4]—in exchange for

---

[4] The Supreme Court described some of those benefits as follows:

various fees and an agreement "to submit to the national organization's exacting regulation of virtually every conceivable aspect of their operations." *Id.* at 465. In finding that the Florida district court properly exercised jurisdiction over the nonresident defendant, the Supreme Court explained that a party who "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state'" by way of a franchise agreement "are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)). As the Supreme Court detailed:

> Eschewing the option of operating an independent local enterprise, [the Michigan franchisees] deliberately "reach[ed] out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, [the franchisees] entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of [the franchisees'] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated." [The franchisees'] refusal to make the contractually required payments in Miami, and his continued use in Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida.

---

> Burger King licenses its franchisees to use its trademarks and service marks for a period of 20 years and leases standardized restaurant facilities to them for the same term. In addition, franchisees acquire a variety of proprietary information concerning the "standards, specifications, procedures and methods for operating a Burger King Restaurant." They also receive market research and advertising assistance; ongoing training in restaurant management; and accounting, cost-control and inventory-control guidance. By permitting franchisees to tap into Burger King's established national reputation and to benefit from proven procedures for dispensing standardized fare, this system enables [the franchisees] to go into the restaurant business with significantly lowered barriers to entry.

*Id.* at 464–65.

8

*Id.* at 479–80.  That is precisely what happened here.  Defendant reached out beyond China and negotiated with a New Jersey corporation for a long-term business relationship and the manifold benefits that it would derive from its affiliation with Plaintiff's global reputation.  In so doing, Defendant entered into a multi-year relationship that envisioned continuing and wide-reaching contacts with Plaintiff in New Jersey.  Although Defendant disputes what, if any, obligations it owed to Plaintiff, it is undisputed that Defendant's relationship with Plaintiff was contingent on Defendant's adherence to the terms set forth in the charter or the Strategic Cooperation Agreement, which created a relationship between the parties much like the franchise agreement in *Burger King*.  Finally, Defendant's failure to comply with its duties resulted in the termination of the relationship, and as in *Burger King*, Defendant's conduct caused foreseeable injuries to Plaintiff in the forum state.

In sum, this Court finds that there is at least an "arguable basis" for exercising personal jurisdiction over Defendant, and thus, the judgment was not void.  *United Student Aid Funds, Inc.*, 559 U.S. at 271 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).  Consequently, Defendant's Motion to vacate the default judgment pursuant to Rule 60(b)(4) and thereafter dismiss the Complaint will be denied.

### B. Rule 60(b)(1)

Although Defendant's inaction contributed to its delay in responding to the Complaint and default judgment, this Court will grant its Motion pursuant to Rule 60(b)(1).  A party may be entitled to relief from a default judgment under Rule 60(b)(1) upon a showing of "mistake, inadvertence, surprise or excusable neglect."  "Situations in which relief has been granted pursuant to Rule 60(b)(1) include . . . where a defendant corporation had no actual notice that a suit had been entered against it."  *Boughner v. Sec'y of Health, Educ. & Welfare, U.S.*, 572 F.2d 976, 977

9

(3d Cir. 1978) (citing *Tozer*, 189 F.2d at 246). A court's decision to grant a motion pursuant to Rule 60(b)(1) is discretionary. *$55,518.05 in U.S. Currency*, 728 F.2d at 194 (quoting *Tozer*, 189 F.2d at 245). In exercising that discretion, though, a district court must consider the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73–74 (3d Cir. 1987) (collecting cases). The burden to establish a right to relief under Rule 60(b)(1) lies with the movant. *$55,518.05 in U.S. Currency*, 728 F.2d at 195–96; *see also Ethan Michael Inc. v. Union Twp.*, 392 F. App'x 906, 909 (3d Cir. 2010).

The four *Emcasco* factors weigh in favor of vacating the default judgment. First, the only prejudice that Plaintiff would experience is that which inherently accompanies a vacatur of a default judgment—*i.e.*, the case would be reopened and litigated on the merits. That effect, standing alone, "rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656–57 (3d Cir. 1982).

Second, Defendant has established a *prima facie* meritorious defense; it has presented arguments that call into question the validity of the contract and the existence of a fiduciary relationship between the parties. If Defendant establishes these proffered defenses at trial, it "would constitute a complete defense to the action." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citing *Tozer*, 189 F.2d at 243).

Third, although a close call, this Court finds that Defendant's delay is excusable. In considering a defendant's culpability, courts in the Third Circuit apply a standard of "willfulness" or "bad faith." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). "Willfulness or bad

faith means more than mere negligence but can be satisfied with less than knowing disregard." *Mrs. Ressler's Food Prods. V. KZY Logistics*, 675 F. App'x 136, 142 (3d Cir. 2017) (internal quotation marks omitted).  Here, Defendant has set forth affidavits in which it demonstrates that it had no actual notice of either the lawsuit or default judgment until early 2023 and that, days after learning the circumstances of the default judgment, it filed the instant Motion.  It is certainly perplexing why Defendant waited until July 2023 to enter an appearance in this case, despite its admission that it became aware of both the suit and the default judgment in early 2023.  Defendant has not provided any justification for this delay.  Reasonable minds could disagree as to whether Defendant's failure to appear in this lawsuit in early 2023 should foreclose relief under Rule 60(b)(1); however, in close cases, especially those involving large sums of money, Third Circuit precedent dictates that district courts err on the side of granting relief so that the case may be decided on the merits.  *See $55,518.05 in U.S. Currency*, 728 F.2d at 194–95 (quoting *Tozer*, 189 F.2d at 245) ("[D]oubtful cases [must] be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'"); *see also Tozer*, 189 F.2d at 245 ("Matters involving large sums should not be determined by default judgments if it can reasonably be avoided.").  Following the Third Circuit's directive, this Court will grant Defendant's Motion and vacate the default judgment so that the matter may be decided on the merits.[5]

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**, and the default judgment (D.E. 12) is hereby **VACATED**.[6]  An appropriate order follows.

---

[5] Neither party addresses the fourth *Emcasco* factor—the effectiveness of alternative sanctions—nor does this Court see any justification for so imposing them.

[6] Having determined that the default judgment should be vacated pursuant to Rule 60(b)(1), this Court need not reach Defendant's argument pursuant to Rule 60(b)(6).

11

          /s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

| | |
|---|---|
| Orig: | Clerk |
| cc: | Leda D. Wettre, U.S.M.J. |
| | Parties |